UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JANE DOE (C.T.K.),

   Plaintiff,

  v.                Case No. 25-C-1274

CHOICE HOTELS INTERNATIONAL, INC., et al.,

   Defendants.

---

### DECISION AND ORDER GRANTING MOTIONS TO DISMISS

---

  Plaintiff Jane Doe (C.T.K.) brought this action under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1581, *et seq*., against Defendants Choice Hotels International, Inc., Choice Hotels International Services Corp. (together, Choice Hotels), and App Pro of Appleton, Inc. (App Pro), a franchisee of Choice Hotels that owned and operated a Comfort Suites hotel in downtown Appleton, Wisconsin. The TVPRA, as originally enacted, authorizes victims of sex trafficking to bring civil actions for damages against those who trafficked them. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023) (citing 18 U.S.C. § 1595 (2003)). In 2008, Congress broadened the civil remedy to allow victims "to recover damages not only from a trafficker who committed a federal [sex trafficking] crime but also from a person who 'knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act' of sex trafficking." *Id.* (quoting 18 U.S.C. § 1595(a) (2008)). Plaintiff alleges she suffered harm as a result of sex trafficking she endured in the Appleton Comfort Suites, a hotel owned, operated, maintained, and controlled by Defendants and that Defendants participated in and benefitted from such trafficking. The court has jurisdiction under 28 U.S.C. § 1331.

The original complaint was filed in the District of Maryland on October 1, 2024. A first amended complaint (FAC) was filed on December 16, 2024, after Defendants filed motions to dismiss. Defendants again moved to dismiss but venue was transferred to this court on August 25, 2025, before those motions were decided. Defendants have now renewed their motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in this court, and they are fully briefed. For the reasons set forth below, Defendants' motions will be granted.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a complaint must have factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he must plead "more than labels and conclusions." *Id.* Thus, a simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is intended, in part, to protect against "a plaintiff with a largely groundless claim" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 558 (internal quotations omitted). For a claim to have facial plausibility, the plaintiff must plead:

> factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely

2

Case 2:25-cv-01274-WCG   Filed 01/12/26   Page 2 of 14   Document 77

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief."

*Id.*

When deciding a motion to dismiss, the court accepts as true all well-pleaded facts in the complaint and draws reasonable inferences in favor of the plaintiff. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (citation omitted). Legal conclusions and conclusory allegations that merely recite the elements of the claim, however, are not entitled to this presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680–81).

## ALLEGATIONS IN THE AMENDED COMPLAINT

The FAC alleges that Plaintiff, whose name and age are undisclosed, "is a victim of sex trafficking under 18 U.S.C. § 1591(a) because she was harbored, transported, or provided for the purpose of being caused, through force[,] fraud or coercion, to commit a commercial sex act." FAC ¶ 9, Dkt. No. 19. The 41-page FAC describes the hotel industry and sex trafficking in general but offers few details about Plaintiff specifically or her trafficker. The FAC alleges, for example, that sex slavery's prevalence in the United States has prompted both government and non-profit agencies to educate hotels on the warning signs that may indicate trafficking is occurring. *Id.* ¶¶ 34–35. Choice Hotels and App Pro were trained on the various "red flags" that indicate sex trafficking, including individuals showing signs of fear, submission, physical abuse, verbal threats, malnourishment, poor hygiene, sleep deprivation, lack of freedom of movement, lack of control over ID or money, traveling with an older male companion(s), payment with cash or pre-paid cards, among other indicia. *Id.* ¶¶ 37–39. Choice Hotels and App Pro were, at all relevant times, aware of or should have been aware of these signs and were responsible for developing policies

for observing, reporting, and preventing sex trafficking at their hotels, including the hotel at which Plaintiff was trafficked. *Id.* ¶¶ 42, 46–47, 80.

The FAC also alleges that Defendants were aware of rampant sex trafficking at Choice Hotels-affiliated properties across the country. *Id.* ¶ 48. It cites to various reviews posted on websites that indicate prostitution and drug dealing were rampant. *Id.* ¶¶ 50–51. The FAC asserts that the reviews show Choice Hotels knew of the widespread trafficking problem afflicting its hotels but failed to "take reasonable steps to identify, report, and respond to known or probable sex trafficking occurring and its hotel properties," and "was, by its acts and omissions, facilitating sex trafficking at its branded properties by providing venues where the trafficking was occurring widely and without sufficient detection or deterrence." *Id.* ¶ 52.

Further, the FAC alleges that Defendants knew sex trafficking was prevalent at the Appleton Comfort Suites specifically, where Plaintiff was trafficked. *Id.* ¶¶ 55–58. The Appleton Comfort Suites, according to the FAC, is in a high-crime area with a history of reports of sex trafficking. *Id.* ¶ 55. And the Outagamie County Sheriff's Office was "regularly [] involved at the subject Comfort Suites from July 1, 2014 to March 31, 2015 for calls regarding sex offenses, illegal drugs, and harassment—all signs of illegal sex trafficking." *Id.* ¶ 56. According to the FAC, Defendants knew or should have known about the pervasive sex trafficking "based on obvious indicators of this activity[,]" including both public sources like internet reviews and non-public sources like internal investigations, customer complaints, surveillance systems, and law enforcement reports. *Id.* ¶¶ 57–63. During the time of Plaintiff's sex trafficking, App Pro is alleged to have reported instances of suspected sex trafficking to Choice Hotels. *Id.* ¶ 63.

Plaintiff also alleges specific indicia of her trafficking that she says Defendants knew or should have known were "obvious signs her traffickers were engaged in sex trafficking." *Id.* ¶ 65.

4

From these signs, Choice Hotels and App Pro are alleged to have had both actual and constructive knowledge of her being trafficked. Despite this knowledge, Defendants are alleged to have failed to do anything to stop the trafficking of Plaintiff, and instead, they facilitated the trafficking by continuing to rent rooms to her trafficker. *Id.* ¶¶ 66–81.

Based on these and additional allegations, the FAC asserts three claims. Count One alleges that Choice Hotels and App Pro are liable as perpetrators of sex trafficking as defined in 18 U.S.C. § 1591(a), thereby violating 18 U.S.C. § 1595(a). FAC ¶¶ 90–93. Count Two alleges both Choice Hotels and App Pro are liable as beneficiaries of sex trafficking as defined in § 1591(a), thereby violating § 1595(a). FAC ¶¶ 94–97. Count Three alleges that Choice Hotels is vicariously liable for App Pro's direct liability for violations of the TVPRA. *Id.* ¶¶ 98–102. Plaintiff argues Choice Hotels is liable under Count Three because it subjected App Pro to "detailed standards and requirements" regarding the hotel "through the franchising agreements, through detailed written policies and manuals, and through other formal protocols, directives, mandates, and expectations[,]" thereby exercising "systemic and pervasive control over" App Pro's operation of the hotel. *Id*. ¶¶ 85, 87.

## TVPRA CIVIL LIABILITY

As noted above, the TVPRA provides a civil remedy for victims of the crime of sex trafficking as defined by federal law. Federal law imposes criminal liability on:

Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

> knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . .

18 U.S.C. § 1591(a).

By its terms, the statute distinguishes between victims who are children from those who are adults. A person can be criminally liable for sex trafficking of an adult only if he knows or acts in reckless disregard of the fact that force, threats of force, fraud, or coercion will be used to cause the person trafficked to engage in a commercial sex act. *See Doe (S.J.C.) v. ESA P Portfolio LLC*, No. 1:24-CV-02423-JPB, 2024 WL 4808137, at *3 (N.D. Ga. Nov. 15, 2024) (noting that "for a sex trafficking offense to be committed against an adult, the offense must be 'effected by means of force, threats of force, fraud, or coercion'"). The term "coercion" is defined in the criminal statutes as:

> (A) threats of serious harm to or physical restraint against any person;
>
> (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
>
> (C) the abuse or threatened abuse of law or the legal process.

18 U.S.C. § 1591(e)(2). For a child, such knowledge or reckless disregard of the means used to cause the person to engage in a commercial sex act is not required. The FAC is silent as to Plaintiff's age. The court therefore assumes she was an adult at the time of the alleged trafficking and the adult standard applies.

Under 18 U.S.C. § 1595(a), a person who is a victim of a violation of § 1591(a) may recover damages, along with reasonable attorneys fees, from "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that

6

person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). The Seventh Circuit has noted this section creates two kinds of civil liability: perpetrator liability and participant/beneficiary liability. *G.G.*, 76 F.4th at 552. Perpetrator liability under § 1595(a) refers to the liability of a person who actually commits a crime in violation of § 1591(a). Participant/beneficiary liability refers to one who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). Plaintiff alleges that Defendants are liable to her both as perpetrators and as participants. Because the standard for participant/beneficiary liability is lower, the court will address that first.

## ANALYSIS

To prove participant/beneficiary liability under § 1591, a sex trafficking victim "must allege and ultimately prove that (1) a venture has engaged in an act in violation of Section 1591, (2) the defendant knew or should have known that the venture had violated Section 1591, (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation." *G.G.*, 76 F.4th at 553. In its motion to dismiss, App Pro contends that the FAC fails to plausibly allege it knew or should have known the alleged venture engaged in sex trafficking or that it knowingly benefitted from the alleged venture. Choice Hotels additionally argues that it was removed from the day-to-day operation of the Comfort Suites where the trafficking allegedly occurred and therefore cannot be held vicariously liable for what App Pro, its franchisee, may have done or failed to do.

The court agrees that the FAC fails to allege facts that plausibly support Plaintiff's claims that Defendants are liable to her for sex trafficking under the TVPRA. To begin, the FAC doesn't even allege in non-conclusory language that Plaintiff was a sex trafficking victim within the

7

meaning of § 1591(a). As noted above, "for a sex trafficking offense to be committed against an adult, the offense must be 'effected by means of force, threats of force, fraud, or coercion.'" *Doe (S.J.C.)*, 2024 WL 4808137, at *3. While Plaintiff alleges she is a "victim of sex trafficking under § 1591(a) because she was harbored, transported, or provided for the purpose of being caused, through force fraud or coercion, to commit a commercial sex act[,]" FAC ¶ 9, these are "legal conclusions and conclusory allegations" that merely recite the elements of the claim and thus are not entitled to the presumption of truth that otherwise applies to allegations of the complaint. *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 556 U.S. at 680–81). The same applies to the allegations in paragraph 30 of the FAC, which reads:

> Jane Doe (C.T.K.) was trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts. Jane Doe (C.T.K.)'s trafficker pretended to be her boyfriend, who used his romantic relationship with Jane Doe (C.T.K.) to groom and coerce her into engaging in commercial sex. Jane Doe (C.T.K.)'s trafficker used his position of power over her to force Jane Doe (C.T.K.) to get hooked on drugs so that he could maintain his control over her. In total, Jane Doe (C.T.K.) was trafficked continuously from January 2014 through December 2015. During her trafficking period, specifically from July 1, 2014 through March 31, 2015, Jane Doe (C.T.K.) was trafficked at App Pro of Appleton, Inc. d/b/a Comfort Suites located at 3809 W. Wisconsin Avenue, Appleton, Wisconsin 54915.

FAC ¶ 30. Again, while the FAC alleges in conclusory fashion that Plaintiff was "trafficked through force and coercion," it provides no factual allegations as to what actions were taken by her trafficker to "force" or "coerce" her to engage in commercial sex acts, facts that would certainly fall within her personal knowledge. To the contrary, the allegations suggest that the trafficker entered into a "romantic relationship" with her and then persuaded her to engage in such acts. The FAC alleges Plaintiff's trafficker "used his position of power over her to force Jane Doe (C.T.K.) to get hooked on drugs so that he could maintain his control over her" but says nothing about what this power consisted of, how it was used, or what he did to maintain control over her. The court found similar allegations in *Doe (S.J.C.)* insufficient to support a claim under the TVPRA:

8

> The Court will begin by noting that Plaintiff's entire Complaint is replete with conclusory allegations. As to the allegations that Plaintiff was a victim of sex trafficking specifically, Plaintiff's allegations are sparce. Plaintiff alleges that she "is a victim of sex trafficking . . . because she was harbored, transported, or provided for the purpose of causing her, through force, fraud, or coercion, to commit a commercial sex act." . . . This is simply the statutory language that defines sex trafficking. As such, this is an impermissible conclusory allegation that need not be considered. Plaintiff alleges elsewhere in her Complaint that she was "trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts." . . . Significantly, missing from Plaintiff's Complaint are non-conclusory allegations or facts that show how she was forced or how she was coerced to engage in commercial sex acts. For example, Plaintiff does not allege that she was drugged or physically assaulted or threatened in any way. She also does not allege that she was restrained against her will. Because Plaintiff's Complaint does not contain any non-conclusory allegations which would show that she was a victim of trafficking through force, fraud or coercion, dismissal is warranted.

2024 WL 4808137, at *3 (record citations omitted).

Even assuming the allegations are sufficient to show Plaintiff is a sex trafficking victim, the FAC in this case fails to plausibly allege facts to show Defendants or their employees knew or should have known that Plaintiff was being trafficked. Other than unsupported conclusory allegations that Defendants knew or should have known that Plaintiff was being trafficked, there are no factual allegations in the FAC from which such knowledge, whether actual or constructive, could be inferred. The FAC alleges only that there were what have been identified as "red flags" of sex trafficking. But "red flags" are warning signs, not actual knowledge. Moreover, the "red flags" Plaintiff identifies as specific to her say nothing about whether her trafficker used force, threats of force, fraud, or coercion to induce her to engage in commercial sex acts, an essential element of a charge of sex trafficking against an adult victim.

For example, the FAC cites as "obvious signs" that Plaintiff was being sex trafficked the following:

> a. The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;

9

b. Other girls were trafficked at the same hotel at the same time as Jane Doe (C.T.K.);

c. Jane Doe (C.T.K.) and her traffickers would stay for multiple times between July 1, 2014 through March 31, 2015.

d. The front desk gave her trafficker a specific room for them to stay.

e. Jane Doe (C.T.K.) asked for clean sheets and towels multiple times a day.

f. The traffickers were often present with Jane Doe (C.T.K.) at check in;

g. There was heavy foot traffic in and out of Jane Doe (C.T.K.)'s room involving men who were not hotel guests;

h. Jane Doe (C.T.K.) had around twenty (20) johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and

i. Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel.

FAC ¶ 65.

Unless the hotel staff was stationed outside her door, which is not plausible, several of these "red flags" would have been known only to Plaintiff and her trafficker. For example, foot traffic in and out of hotels is common, but that there was heavy foot traffic in and out of Plaintiff's room involving men who were not hotel guests would not be known to staff unless they had her room under surveillance. For similar reasons, the fact that Plaintiff had around twenty johns every day is not something hotel staff would know. And while these and other "red flags" cited in the FAC, even if observed by hotel staff, may have suggested that Plaintiff was engaging in commercial sex, that is not the same as sex trafficking within the meaning of § 1591(a). Missing from the amended complaint are any allegations that Defendants or their employees ever witnessed Plaintiff being subjected to force, threats of force, fraud, or coercion by her alleged trafficker. There are no allegations, for example, that Plaintiff's trafficker publicly abused her, that she

10

exhibited cuts or bruises on her body; that she appeared nervous, frightened, or under-nourished; or that she ever reported, complained, or even suggested to housekeeping or other staff that she was being forced to engage in commercial sex acts against her will, despite numerous opportunities to do so outside the presence of her trafficker.

As Defendants note, courts have found even more suggestive "red flags" than those alleged here insufficient to support an allegation of actual or constructive knowledge on the part of hotel operators and franchisees, let alone franchisors. In *B.J. v. G6 Hospitality, LLC*, for example, the court concluded that allegations far more egregious than those Plaintiff offers here were insufficient to support a claim that the hotel knew or should have known that the plaintiff was being trafficked:

> B.J. alleges, for example, that, "[o]n more than one occasion, the San Ramon Marriott housekeeping staff observed B.J.'s buyers violently attack her" (see SAC ¶ 62) and "[o]n another occasion . . . witnessed a buyer swiftly depart B.J.'s room in a state of complete undress" (see SAC ¶ 63); that "housekeeping staff at the Clarion Hotel . . . entered B.J.'s room while she was being sold or preparing to be sold for commercial sex" (see SAC ¶ 80); and that "Hilton Concord's hotel staff observed . . . B.J. being escorted into and out of rooms by as many as eight buyers in any given day" (see SAC ¶ 87). Such allegations, however, are equally consistent with criminal conduct other than sex trafficking, e.g., prostitution.

No. 22-CV-03765-MMC, 2023 WL 3569979, at *6 (N.D. Cal. May 19, 2023); *see also E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021) (holding that, despite allegations "that Plaintiff would use fake IDs to check into rooms in Movant Defendants' brand hotels; that the reservations would be under various names, including her trafficker's name; that while staying in the rooms, Plaintiff would often call for extra towels, refuse service, and leave trash cans full of items associated with sexual activity; and that 'there was significant foot traffic within the hotels that her trafficker frequented,' . . . the FAC does not state how Movant Defendants knew or should have known that Plaintiff was being trafficked"); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F.

11

Supp. 3d 921, 941 (D. Or. 2020) ("Although the complaint suggests the hotels had some level of notice that Plaintiff engaged in commercial sex acts, the vague allegations fail to show the hotels knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force, or coercion."). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citations omitted).

To be sure, red flags of the kind the FAC identifies may lead a proactive law enforcement officer to undertake an investigation to determine whether sex trafficking or other illegal conduct, such as prostitution or drug dealing, are going on at the hotel. But hotels are not law enforcement agencies. The TVPRA does not require hotels to monitor or surveil their guests. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-000656-BLF, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020) ("To be clear, the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking."); *A.B. v. Marriott Int'l, Inc.*, CV 19-5770, 2020 WL 1939678, at *8 (E.D. Pa. Apr. 22, 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking.").

The FAC is replete with general information about sex trafficking and its connection to the hotel industry in this country. But "[g]eneral knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff." *A.B.*, 484 F. Supp. 3d at 938. Such reports do not even suggest that Defendants knew or should have known that Plaintiff was being trafficked.

Relying on *G.G. v. Salesforce.com, Inc*, 76 F.4th 544 (7th Cir. 2023), Plaintiff argues that she need not allege that Defendants knew or should have known that she, in particular, was being

12

Case 2:25-cv-01274-WCG    Filed 01/12/26    Page 12 of 14    Document 77

trafficked. Based on the Seventh Circuit's decision in *G.G.*, Plaintiff argues, it is enough that Defendants participated in a venture that they knew or should have known violated § 1591. Moreover, under *G.G.*, Plaintiff notes, the venture Defendants are alleged to have participated in need not even be primarily a sex-trafficking venture for civil liability to arise.

The facts alleged in *G.G.*, however, are far different from those alleged in the FAC. In *G.G.*, a juvenile victim alleged that the defendant software company had entered into a series of contracts with Backpage.com, an online marketplace that "had been publicly identified by law enforcement, United States Attorneys General, and every state Governor as the biggest and most notorious sex trafficking and pimping website in the United States," to "'facilitate and support' Backpage's 'exponential growth' and to give Backpage 'the ability to keep pace with increasing customer demand and scale its platform into an international sex-trafficking hub.'" 76 F.4th at 548–49. The court explicitly distinguished the case before it where the defendant was alleged to have contracted with a known, large-scale sex trafficker from cases in which sporadic sex trafficking occurred in low-budget hotels. In cases involving one victim, the court held, "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture.'" *Id.* at 557. "[T]o allow allegations that a civil defendant was aware of sporadic sex trafficking in low-budget hotels generally to show constructive knowledge of a particular sex trafficking venture unjustifiably bridges the scienter gap between should have known and might have been able to guess." *Id.* (internal quotations omitted). Thus, *G.G.* does not support Plaintiff's argument that actual or constructive knowledge of her trafficking is not required.

In sum, the court concludes that the FAC fails to plausibly allege a participation/beneficiary claim under the TVPRA. The FAC fails to allege facts that support an inference that Defendants or their employees knew or should have known that she was being trafficked at the Appleton

13

Comfort Suites hotel. And because the FAC fails to state a claim for participation/beneficiary liability, it necessarily follows that it fails to state a claim for perpetrator liability. This conclusion follows because a "perpetrator" of sex trafficking under § 1591(a)(1) must have actual knowledge of the trafficking. *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 763–65 (C.D. Cal. 2024); *see also Doe (G.N.C.) v. Uniquest Hospitality, LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024) ("The SAC does not make out a claim of 'perpetrator' liability that requires actual knowledge of the sex trafficking activity."). Having concluded that the FAC fails to allege facts showing even constructive knowledge, it follows that actual knowledge is lacking as well. And having failed to allege a TVPRA claim even against App Pro, it also follows that Plaintiff's vicarious liability claim against Choice Hotels fails, as well.

Accordingly, for the reasons stated herein, the motions to dismiss the FAC by Choice Hotels (Dkt. No. 64) and App Pro (Dkt. No. 73) are **GRANTED**. Plaintiff's request for leave to amend is also **GRANTED**. Plaintiff may file a Second Amended Complaint within thirty (30) days of this order. In the event Plaintiff fails to do so, the case will be dismissed and final judgment will be entered.

**SO ORDERED** at Green Bay, Wisconsin this 12th day of January, 2026.

William C. Griesbach
United States District Judge