# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

JANE DOE (C.T.K.), AN INDIVIDUAL,

    Plaintiff,

v.

CHOICE HOTELS INTERNATIONAL, INC., *et al.*

    Defendants.

**Civil Action No.: 2:25-cv-01274-WCG**

 

**CHOICE HOTELS INTERNATIONAL, INC., AND CHOICE HOTELS INTERNATIONAL SERVICES CORP.'S MEMORANDUM OF LAW IN SUPPORT OF <u>THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

PROCEDURAL HISTORY ..........................................................................................................3

STANDARD OF REVIEW ...........................................................................................................5

ARGUMENT .................................................................................................................................5

     I.     Plaintiff's TVPRA Claim Against Choice Should be Dismissed (Count 2). ............5

          **A.**     Plaintiff Fails to Plead Choice's Knowledge. ...............................................5

          **B.**     Plaintiff Fails to Plead Choice's "Participation in a Venture." ..................12

          **C.**     Plaintiff Fails to Plead a Cognizable "Venture.".......................................17

     II.    Plaintiff's Vicarious Liability Claim Against Choice Should be Dismissed (Count 3). .........................................................................................................................24

     III.   Plaintiff's Claims are Sharply Limited by the Statute of Limitations. ..................27

     IV.   Dismissal Should Be with Prejudice...................................................................27

CONCLUSION.............................................................................................................................28

Page(s)

**Other Authorities**

*A.B. v. Hilton Worldwide Holdings, Inc.*,
484 F. Supp. 3d 921 (D. Or. 2020).................................................................................. 5, 24

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
532 F. Supp. 3d 1018 (D. Or. 2021).................................................................................. 24

*A.D. v. Marriott Int'l, Inc.*,
No. 22-cv-645, 2023 WL 2991042 (M.D. Fla. Apr. 18, 2023) ........................................ 14

*A.D. v. Wyndham Hotels & Resorts, Inc.*,No. 4:19CV120, 2020 WL 8674205 (E.D. Va. July 22,
2020) ................................................................................................................................. 12

*A.G. v. Northbrook Industries, Inc.*,
--- F.4th ----, No. 25-10816, 2026 WL 864178 (11th Cir. Mar. 30, 2026)...........................10, 11

*A.L. v. G6 Hosp. Prop. LLC*, No. 2,
5-80056-CV, 2025 WL 1151750 (S.D. Fla. Apr. 18, 2025) ........................................... 19

*A.L. v. G6 Hosp. Prop. LLC*,No. 25-80056-CV, 2025 WL 1151750 (S.D. Fla. Apr. 18, 2025).... 19

*Allen v. Choice Hotels Int'l, Inc.*,
276 F. App'x 339 (4th Cir. 2008)..................................................................................... 27

*Arlin–Golf, LLC v. Vill. of Arlington Heights*,
631 F.3d 818 (7th Cir. 2011) .............................................................................................. 2

*Arlin–Golf*,
631 F.3d.............................................................................................................................. 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................. 5

*B.C. v. G6 Hospitality Prop., LLC*,
No. 3:25-cv-05057, 2025 WL 1837620 (W.D. Wash. July 3, 2025)........................................ 10

*B.J. v. G6 Hospitality, LLC*,
No. 22-CV-03765-MMC, 2023 WL 3569979 (N.D. Cal. May 19, 2023) .................. 8, 9, 15, 16

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020) ..................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................. 5

*C.C. v. H.K. Grp. of Co., Inc.*,
No. 1:21-CV-1345, 2022 WL 467813 (N.D. Ga. Feb. 9, 2022)................................................. 14

*C.C. v. Rashid*,
No. 2:23-cv-02056, 2026 WL 252548 (D. Nev. Jan. 29, 2026)................................................... 7

*C.C. v. Rashid*,
No. 23-cv-02056, 2024 WL 5200543 (D. Nev. Dec. 20, 2024)................................................ 27

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)............................................................................................................. 16

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,511 U.S. 164 (1994)....... 24

Choice Hotels Int'l, Inc., No. 25-18,
12, 2025 WL 3280239 (E.D. La. Jan. 22, 2026) ...................................................................... 14

*Crestview Vill. Apartments v. United States Dep't of Housing and Urban Dev.,*
 383 F.3d 552 (7th Cir. 2004) ................................................................................................ 2

*Crestview Vill. Apartments,*
 383 F.3d ............................................................................................................................... 28

*DelRio-Mocci v. Connolly Props. Inc.,*
 672 F.3d 241 (3d Cir. 2012) ................................................................................................ 20

*DiFederico v. Marriott Int'l, Inc.,*130 F. Supp. 3d 986 (D. Md. 2015) ................................. 25

*Doe #1 v. Apple, Inc.,*
 96 F.4th 403 (D.C. Cir. 2024) ................................................................................. 13, 18, 19

*Doe #1 v. Red Roof Inns, Inc.,*
 21 F.4th 714 (11th Cir. 2021) ...................................................................................... passim

*Doe v. G6 Hospitality, LLC,*
 No. 2:24-cv-01235, 2025 WL 1167550 (W.D. Wash. Apr. 22, 2025) ................................. 27

*E.S. v. Best Western Int'l, Inc.,*
 510 F. Supp. 3d 420 (N.D. Tex. 2021) ............................................................................. 9, 24

*G.G. v. Salesforce.com, Inc.,*
 76 F.4th 544 (7th Cir. 2023) ........................................................................................ passim

*G.N.C. v. Uniquest Hospitality, LLC,*
 No. 23-cv-7980 (PKC), 2024 WL 4149251 (S.D.N.Y. Sept. 11, 2024) ............................... 21

*Gonzalez-Koeneke v. West,*
 791 F.3d 801 (7th Cir. 2015) .............................................................................................. 27

*H.G.,*
 *v. Inter-Cont'l Hotels Corp.,* 489 F. Supp. 3d 697 (E.D. Mich. 2020) ............................... 27

*Jane Doe (T.R.S.) v. Wyndham Hotels & Resorts,*
 No. 2:23-cv-01676-DAD-CSK, 2024 WL 3088722 (E.D. Cal. June 20, 2024) ........... 15, 21, 23

*K.B. v. G6 Hospitality, L,*
 LC, No. 1:23-CV-2597-TWT, 2024 WL 4701891 (N.D. Ga. Nov. 5, 2024) ........................... 27

*K.H. v. Riti, Inc.,*
 No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024) ...................................... 12, 15, 24

*K.M. v. CPA Hotels of Atlanta, LLC,*
 No. 1:23-cv-190-TWT, 2023 WL 5747490 (N.D. Ga. Aug. 30, 2023) ................................. 27

*K.O. v. G6 Hospitality, LLC,*
 728 F. Supp. 3d 624 (E.D. Mich. 2024) ................................................................................ 9

*Keller v. Danford,*
 No. 2:25-cv-595, 2026 WL 892290 (D. Utah Mar. 31, 2026) ............................................... 9

*Kelly v. Gersonde,*
 No. 19-cv-01118, 2021 WL 2895735 (E.D. Wis. July 8, 2021) ........................................... 10

*Kerl v. Dennis Rasmussen, Inc.,*
 273 Wis.2d 106 (2004) ........................................................................................................ 27

*L.M. v. 42 Hotel Raleigh, LLC,*
 No. 5:23-CV-235-FL, 2024 WL 4204906 (E.D.N.C. Sept. 16, 2024) .................................. 20

*Lydia K. v. G6 Hospitality Franchising LLC,*
 No. 3:25-CV-0755-N, 2026 WL 370057 (N.D. Tex. Feb. 10, 2026) ........................ 9, 13, 14, 17

*Mia v. Kimberly-Clark Corp.,*
 No. 1:22-cv-02353, 2025 WL 752564 (D.D.C. Mar. 10, 2025) ........................................... 17

*Mueller v. Deutsche Bank Aktiengesellschaft*,
   777 F. Supp. 3d 329 (S.D.N.Y. 2025) .................................................................. 17, 19
*N.G. v. G6 Hosp. Prop. LLC*,No. 6:,
   24-cv-2379-JA-DCI, 2025 WL 1332210 (M.D. Fla. May 7, 2025)......................................... 19
*N.G. v. G6 Hosp. Prop. LLC*,No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210 (M.D. Fla. May 7,
   2025) ................................................................................................................... 19
*Powell v. Western Express, Inc.*,
   No. 3:24-cv-1315, 2025 WL 2306949 (D. Tenn. Aug. 11, 2025) ............................................. 23
*R.C. v. Choice Hotels Int'l, Inc.*,
   No. 5:23-cv-00872, 2024 WL 1443412 (N.D. Ohio Apr. 2, 2024)............................................ 13
*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
   91 F.4th 270 (4th Cir. 2024) ............................................................................................. 20
*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) ............................................................................................. 18
*S.C. v. Sheraton, LLC*,
   No. 23-CV-00451, 2024 WL 1329422 (D.N.M. Mar. 28, 2024) ........................................ 21, 23
*S.C. v. Wyndham Hotels & Resorts, Inc.*, N,
   o. 1:23-cv-00871, 2024 WL 2186173 (N.D. Ohio May 15, 2024) ........................................... 13
*S.C. v. Wyndham Hotels & Resorts, Inc.*,
   728 F. Supp. 3d 771 (N.D. Ohio 2024) ........................................................................... 13, 18
*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................................................ 27
*S.M.A. v. Salesforce, Inc.*,
   No. 3:23-CV-0915-B, 2024 WL 1337370 (N.D. Tex. 2024) .................................................... 13
*Schear v. Motel Mgmt. Corp. of Am.*,
   61 Md. App. 670 (1985)..................................................................................................... 25
*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
   605 U.S. 280 (2025) .......................................................................................................... 23
*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023)........................................................................................................... 23
*United States v. McClellan*,
   794 F.3d 743 (7th Cir. 2015).............................................................................................. 20
*United States v. Shum*,
   496 F.3d 390 (5th Cir. 2007).............................................................................................. 20
*United States v. Tipton*,
   518 F.3d 591 (8th Cir. 2008).............................................................................................. 20
*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010).............................................................................................. 21
*United States v. Vargas-Cordon*,
   733 F.3d 366 (2d Cir. 2013)............................................................................................... 20
*United States v. You*,
   382 F.3d 958 (9th Cir. 2004).............................................................................................. 20
*United States v. Zheng*,
   87 F.4th 336 (6th Cir. 2023)............................................................................................... 20
*Walker v. Pacific Pride Serv., Inc.*,
   341 F. App'x 350 (9th Cir. 2009)........................................................................................ 25

Regulations

§ 1591(a)(2) .................................................................................... 20
18 U.S.C. § 1591(a) ................................................................. 3, 4, 18
18 U.S.C. § 1591(a)(1).............................................................. 20, 21
18 U.S.C. § 1591(e)(4)..................................................................... 21
18 U.S.C. § 1595(a) ................................................................. passim
P.L. 117-347, § 102 ....................................................................... 25
Section 1591................................................................................... 22
Section 1591, (2)............................................................................... 3
Section 1591, (3)............................................................................ 3, 4

**INTRODUCTION**

In its Order dismissing Plaintiff's First Amended Complaint ("FAC"), the Court correctly interpreted the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), the statute underlying Plaintiff's two claims against Choice. *See generally* Doc. No. 77 ("Order"). That Order persuasively explained that Plaintiff had failed to plausibly plead Choice Hotels International, Inc., and Choice Hotels International Services, Corp.'s (together, "Choice")[1] knowledge of Plaintiff's allegations that she was trafficked at hotel for which Choice served only as a brand franchisor.

Plaintiff's Second Amended Complaint ("SAC") fails to correct these deficiencies and leaves in place earlier errors. *See generally* Doc. No. 78 (SAC); Ex. A (redline showing changes from FAC to SAC).[2] As to her TVPRA claim, the SAC's theory of knowledge again relies almost exclusively on allegations that hotel staff—not Choice personnel—observed "red flags" of her trafficking. *See* SAC ¶ 67. But as the Court properly observed before, "'red flags' are warning signs, not actual knowledge," and nothing in the new "red flag" allegations, even assuming Choice had observed them, would have created knowledge that she was subject to "force, threats of force, fraud, or coercion" as is required for trafficking. Order at 9. Rather, Plaintiff's theory remains that Choice should have undertaken a "proactive" investigation into her allegations. *Id.* at 12. "But hotels are not law enforcement agencies," and "[t]he TVPRA does not require hotels to monitor or surveil their guests." *Id.*

---

[1] Choice Hotel Services Corp. has been improperly named in this lawsuit. It is a holding corporation which plays no role in any of Plaintiff's allegations.
[2] *See also* Doc. Nos. 19 (FAC), 65 (Choice Motion to Dismiss Brief, "Choice Br."), 72 (Choice Reply in Support of Motion to Dismiss, "Choice Rep.").

The SAC's failure to plead Choice's knowledge is enough to support dismissal of her TVPRA claim. Yet there remain additional grounds. Plaintiff has again failed to plead Choice's "participation in a venture," as required by the statute. For "participation," the SAC continues to rely on Choice's unspecified role in the rental of rooms for "participation." That fails both because it is not clear that Choice played any role in renting rooms to her or her traffickers and, more broadly, such standard commercial transactions are not grounds for liability. Moreover, neither of her two posited ventures are properly pled. The first—a sex trafficking venture—cannot suffice because Plaintiff does not plead any encounters between Choice and her or her traffickers. As a result, Choice was never part of any common undertaking or enterprise. The second alleged venture—a so-called "commercial venture"—is merely derivative of the first. And the SAC identifies nothing in the contractual franchise relationship between Choice and the franchise operator of the hotel, co-Defendant App Pro of Appleton, Inc. ("App Pro"), that played a role in her trafficking or violated § 1591.

Plaintiff's vicarious liability claim also remains deficient. It fails at the outset because App Pro did not engage in trafficking violations. More generally, the pleading does not advance any grounds to support that App Pro acted as Choice's agent. Indeed, the Exemplar Franchise Agreement filed by Choice in this matter, which the Court can consider, demonstrates that Plaintiff's allegations are simply incorrect.

Plaintiff has now amended her pleading twice. This Court "ha[s] no reason to believe that [a third] amendment would not be futile in this case." *Arlin–Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011). To the contrary: there is every reason to believe that a further amended complaint "could not survive [another] motion to dismiss*." Crestview Vill. Apartments v. United States Dep't of Housing and Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (citation and

internal quotation marks omitted). Given these circumstances, Choice respectfully requests that the Court dismiss the claims against it with prejudice.

**PROCEDURAL HISTORY**

The Court is familiar with the basics of Plaintiff's allegations. The SAC, like the pleadings before it, alleges that Plaintiff was trafficked at an Appleton hotel owned and operated by App Pro. SAC ¶ 15, 28. During the time period of her allegations, Plaintiff contends that Choice had entered into a contractual franchise agreement with App Pro. *See, e.g., id.* ¶ 14. As in her earlier complaint, the SAC brings two claims against Choice: Count 2 – a "beneficiary" or "participant" claim under the TVPRA, and Count 3 – a vicarious liability claim alleging that Choice is liable for trafficking committed by App Pro as Choice's agent. *See id.* ¶¶ 98–106.

Following the case's transfer from the District of Maryland (where it was originally filed), the Court granted Choice's and App Pro's motions to dismiss the FAC. *See generally* Order. The Court first observed that the TVPRA creates a cause of action against "'whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act [of criminal trafficking in violation of 18 U.S.C. § 1591(a)].'" *Id.* at 6–7 (quoting 18 U.S.C. § 1595(a)). To make out such a claim, a plaintiff has to plausibly plead "'(1) a venture has engaged in an act in violation of Section 1591, (2) the defendant knew or should have known that the venture had violated Section 1591, (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation.'" Order at 7 (quoting *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553 (7th Cir. 2023)); *see also* 18 U.S.C. § 1591(a) (prohibiting trafficking by "force, threats of force, fraud, [or] coercion").

The Court found that the Complaint failed to sufficiently plead Choice's or App Pro's knowledge. *See* Order at 7–14. As an initial matter, the Court observed that Plaintiff had only provided "conclusory" allegations regarding the use of force and coercion against her. *See id.* at 8.

But even apart from shortcomings, the FAC "fai[ed] to plausibly allege facts to show Defendants or their employees knew or should have known that Plaintiff was being trafficked." *Id.* at 9. As the Court pointed out:

> The FAC alleges only that there were what have been identified as "red flags" of sex trafficking. But "red flags" are warning signs, not actual knowledge. Moreover, the "red flags" Plaintiff identifies as specific to her say nothing about whether her trafficker used force, threats of force, fraud, or coercion to induce her to engage in commercial sex acts, an essential element of a charge of sex trafficking against an adult victim.

*Id.*

As the Court further observed, "[u]nless the hotel staff was stationed outside her door, which is not plausible, several of these 'red flags' would have been known only to Plaintiff and her trafficker." *Id.* at 10. For example, "that there was heavy foot traffic in and out of Plaintiff's room involving men who were not hotel guests" or "that Plaintiff had around twenty johns every day is not something hotel staff would know." *Id.* And these and other "red flags," "even if observed by hotel staff, may have suggested that Plaintiff was engaging in commercial sex, that is not the same as sex trafficking within the meaning of § 1591(a)." *Id.* "Missing from the amended complaint [we]re any allegations that Defendants or their employees ever witnessed Plaintiff being subjected to force, threats of force, fraud, or coercion by her alleged trafficker." *Id.*

The Court noted that "red flags of the kind the FAC identifi[ed] m[ight] lead a proactive law enforcement officer to undertake an investigation to determine whether sex trafficking or other illegal conduct, such as prostitution or drug dealing, [we]re going on at the hotel." *Id.* at 12. "But hotels are not law enforcement agencies," and "[t]he TVPRA does not require hotels to monitor or surveil their guests." *Id.*

**STANDARD OF REVIEW**

To avoid dismissal, a plaintiff must state a legally cognizable claim that is at least plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Similarly, "[a] pleading that offers 'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement'" falls short. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). At its core, the complaint must advance the plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**ARGUMENT**

**I.     Plaintiff's TVPRA Claim Against Choice Should be Dismissed (Count 2).**

**A.     Plaintiff Fails to Plead Choice's Knowledge.**

Under the TVPRA, a plaintiff must plausibly plead that the defendant "knew or should have known" that a venture in which it was participating "engaged in an act" of criminal trafficking against the plaintiff. 18 U.S.C. § 1595(a). Within this Circuit, "[i]n cases involving one victim, . . . 'knowledge of the specific victim goes hand-in-glove with knowledge of the "venture."'" Order at 13 (quoting *Salesforce*, 76 F.4th at 557). Accordingly, in this case, where Plaintiff is the sole alleged victim, the SAC must allege Choice's and App Pro's specific knowledge of Plaintiff's own trafficking allegations. *See id.*; *see also id.* at 12 ("The FAC is replete with general information about sex trafficking and its connection to the hotel industry in this country. But '[g]eneral knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff.'") (quoting *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020)). Moreover, as the Court

5

previously noted, knowledge of trafficking is distinct from knowledge of commercial sexual activities, such as prostitution. *See id.* at 11–12. To establish the former, a plaintiff must sufficiently allege that the defendant knew, or should have known, that "force, threats of force, fraud, or coercion w[ere] . . . used to cause the [plaintiff] to engage in a commercial sex act." *Id.* at 6, 9–10.[3]

The SAC fails to rehabilitate the issues with knowledge that appeared previously. *See id.* at 7–14. A careful walkthrough of each of Plaintiff's new allegations demonstrates this.

### i. The SAC's Generalized Statements About Trafficking are Insufficient.

The SAC adds more allegations about the nature of trafficking behavior across the United States, as well as more lists of purported "red flag" indicators of trafficking. *See* SAC ¶¶ 30–36. These are insufficient along a number of dimensions. To begin, none of these allegations reflect knowledge of Plaintiff's *own* trafficking. *See* Order at 13. Rather, at best, they allege that Choice and App Pro would have been generally aware that, unfortunately, trafficking sometimes does occur within the hospitality industry; that is insufficient for the reasons the Court previously gave. *See id.* ("'[T]o allow allegations that a civil defendant was aware of sporadic sex trafficking in low-budget hotels generally to show constructive knowledge of a particular sex trafficking venture unjustifiably bridges the scienter gap between should have known and might have been able to guess.'") (quoting *Salesforce*, 76 F.4th at 557).

---

[3] The SAC alleges that "[e]ach Defendant knew that the link between commercial sex in a hotel environment and sex trafficking was sufficiently strong that ordinary prudence required treating signs of commercial sex activity as signs of sex trafficking." SAC ¶ 43. This simply blinks this Court's holding, shared by numerous other courts, that the TVPRA does not require hotels (or hotel franchisors like Choice) to affirmatively stop trafficking. *See* Order at 12 (collecting cases). That same logic undermines the SAC's passing, and inaccurate, references to inadequate training. *See* SAC ¶ 47.

### ii. The SAC's New Factual Narrative Has Nothing to Do With Choice or What Choice Knew.

In an effort to better establish her status as a victim (an issue that the Court previously identified, *see id.* at 8–9), Plaintiff now includes a factual narrative regarding her circumstances prior to and during her trafficking. *See* SAC ¶¶ 20–26. Even accepting that narrative as true, nothing in those paragraphs indicates that the events occurred at the subject hotel or were observed by Choice or App Pro employees. As such, the narrative "fails to connect the dots between [Plaintiff's] traffickers and the moving Defendants," *C.C. v. Rashid*, No. 2:23-cv-02056, 2026 WL 252548, at *6 (D. Nev. Jan. 29, 2026), and does not address the knowledge gaps that this Court identified.

### iii. The SAC's "Red Flag" Allegations Remain Insufficient.

As noted above, the Court found the FAC's allegations regarding "red flags" for trafficking to be insufficient. *See* Order at 9–12. A careful review of the SAC's alleged "red flags" makes clear that the issues identified by the Court remain present. *Compare* SAC ¶ 67 *with* FAC ¶ 65.

To begin, half of the "red flag" allegations are unchanged from the FAC. *Compare* SAC ¶¶ 67(a)–(c), (e), (f), (k), (l), and (p), *with* FAC ¶¶ 65(a)–(c), (e)–(i). As those were insufficient before, they remain insufficient now. It is notable, however, the SAC drops the FAC's allegation that "[t]he front desk gave [Plaintiff's alleged] trafficker a specific room for them to stay [in]." FAC ¶ 65(d).

Regardless, the SAC's novel "red flag" allegations are either irrelevant or fail to distinguish indicia of commercial sexual activity (such as prostitution) and trafficking, a distinction that the Court drew sharply in its Order. *See* Order at 11–12. Choice discusses each new allegation in turn:

- The SAC alleges that "[Plaintiff] or another victim was often forced to go to the front desk to rent the room." SAC ¶ 67(d).

   - This changes nothing from the FAC, which had already alleged that "[t]he traffickers were often present with [Plaintiff] at check in." FAC ¶ 65(f). Moreover, it bears

observing that the new allegation appears to imply that Plaintiff "often" did the check in alone, which militates *against* either Choice's or App Pro's knowledge. In addition, while Plaintiff refers to other "victim[s]," there is no specific information or allegations about any of these individuals throughout the SAC (or the FAC).

- The SAC further alleges that the alleged trafficker would remain on-site at the Hotel by the pool, though he was not a registered guest, SAC ¶ 67(g), and would be "visible coming and going from the hotel to collect the money earned from commercial sex." SAC ¶ 67(m).
  - o "'Such allegations, however, are equally consistent with criminal conduct other than sex trafficking, e.g., prostitution.'" Order at 12 (quoting *B.J. v. G6 Hospitality, LLC*, No. 22-CV-03765-MMC, 2023 WL 3569979, at *6 (N.D. Cal. May 19, 2023)). If anything, that the alleged trafficker was often away from the room, either at the pool or off hotel grounds entirely, suggests a lack of control over Plaintiff's movements that is inconsistent with trafficking.

- Plaintiff also alleges that she was dressed provocatively while checking in or in common areas of the hotel; was "noticeably impaired by drugs" while at the hotel; and was "significantly underweight, anxious, and often in a daze while being trafficking." SAC ¶¶ 67(h)–(j).
  - o Though the first two of these allegations reference Plaintiff's appearance at the hotel, the third is generalized and ambiguous. Even so, the Court held that "even more suggestive 'red flags'" are insufficient to support an allegation of actual or constructive knowledge. Order at 11. As the Court noted, in *B.J.*, it was insufficient that the plaintiff in that case alleged that "'housekeeping staff observed [that plaintiff's] buyers violently attack her'" and "'[o]n another occasion . . . witnessed a buyer swiftly depart [that plaintiff's] room in a state of complete undress.'" *Id*.

(quoting 2023 WL 3569979, at \*6). Those allegations were equally consistent with commercial sexual activity that did not involve trafficking. *Id.*; *see K.O. v. G6 Hospitality, LLC*, 728 F. Supp. 3d 624, 646–47 (E.D. Mich. 2024) (similar reasoning). This reasoning applies with still more force to the SAC, particularly given that recent decisions have held that undetailed allegations of visible injuries is insufficient. *See, e.g.*, *Keller v. Danford*, No. 2:25-cv-595, 2026 WL 892290, at \*6 (D. Utah Mar. 31, 2026) ("[Plaintiff] does not describe where she stayed on the occasions when she exhibited a black eye, or provide any specific details regarding size, location, or appearance of the bruising. . . . Allegations of visible injuries, such as bruises, can support a defendant's constructive knowledge of sex trafficking if accompanied by other allegations suggesting that the injuries were caused by a trafficker. For example, allegations that hotel staff heard or observed a trafficker assaulting a victim, or observed a victim being physically restrained or monitored."); *Lydia K. v. G6 Hospitality Franchising LLC*, No. 3:25-CV-0755-N, 2026 WL 370057, at \*4 (N.D. Tex. Feb. 10, 2026) (observing that allegation "that [plaintiff's] bruises were visible to hotel staff," *inter alia*, "may be sufficient to say that an observer knew or should have known of commercial sex, they do not suggest that [defendants] should have known that [plaintiff] was trafficked as a result of force, fraud, or coercion, the specific activity prohibited by the TVPRA").

- Plaintiff also alleged that housekeeping staff would encounter "sex paraphernalia and evidence of drug use" upon entering the rooms. SAC ¶ 67(o).

  o The Court already cited cases rejecting similar allegations. *See* Order at 11 (quoting *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021), which

found insufficient the allegation that plaintiff "would often . . . leave trash cans full of items associated with sexual activity"); *see also B.C. v. G6 Hospitality Prop., LLC*, No. 3:25-cv-05057, 2025 WL 1837620, at *2, *6 (W.D. Wash. July 3, 2025) (similarly finding insufficient the allegation that "suspicious items including cash, drugs, drug paraphernalia, and condoms . . . [were] observed by housekeeping staff").

At bottom, the SAC's new "red flag" allegations suffer from problems similar to those which the Court previous identified. Furthermore, the SAC does not address how Choice, located in Maryland, supposedly observed these onsite indicators. *See* Choice Br. at 20. Instead, the SAC relies, like the FAC before it, on conclusory "information and belief" allegations that somehow, at some time, Choice engaged in "surveillance of the property" or received "information . . . from law enforcement." SAC ¶ 70; *compare* FAC ¶ 60. That was speculation before and it remains speculation now. The SAC has failed to plausibly plead Choice's knowledge.

**iv.**      **The Eleventh Circuit's Recent Decision in *A.G. v. Northbrook Industries, Inc.* Does Not Change this Court's Analysis or the Need for Dismissal.**

Plaintiff is likely to rely heavily on the Eleventh Circuit's recent decision reversing grants of summary judgment in two consolidated TVPRA cases with respect to hotel owners. *See generally A.G. v. Northbrook Industries, Inc.*, --- F.4th ----, No. 25-10816, 2026 WL 864178 (11th Cir. Mar. 30, 2026). That out-of-circuit decision is not binding on this Court, *see Kelly v. Gersonde*, No. 19-cv-01118, 2021 WL 2895735, at *8 (E.D. Wis. July 8, 2021), involved a different posture and standard of review, and did not include any franchisors, *see A.G.*, 2026 WL 864178, at *5. It also did nothing to change the application of the TVPRA in cases involving franchisors as set forth in cases like *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021).

More fundamentally, however, *A.G.* involved facts far different from those presented here. One of the consolidated cases involved, according to police testimony, a hotel with numerous

10

incidents of prostitution activity and which had declined to hire more security notwithstanding police recommendations that it do so. *A.G.*, 2026 WL 864178, at \*2. The two underage plaintiffs stayed at that hotel across multiple occasions and had multiple encounters with hotel staff, including while purchasing prophylactics. *Id.* at \*2. There was also one occasion when their trafficker called a hotel employee to ask the employee to allow the two provocatively dressed plaintiffs to enter the locked room alone, without identification or their names on the reservation. *Id.* at \*2–\*3. The other case involved a similar hotel, which had prior issues of underage commercial sex and in which the owner told one of the housekeepers that "[t]he only way you going to make some money, you got to get these girls back up here working." *Id.* at \*4. That case involved a convicted sex offender who was staying long-term in a portion of the hotel reserved for sex offenders. *Id.* To carry out his trafficking, the sex offender rented a second room, adjoining his own, with daily payments—something that the hotel manager admitted was "a mistake"—and refused to allow housekeeping into that room. *Id.* at \*4–\*5. That plaintiff looked sufficiently underage that at least one potential "john" changed his mind upon encountering her. *Id.*

Plaintiff has alleged nothing comparable to these facts. Moreover, the law applied by the Eleventh Circuit is indistinguishable from the standard applied by the Court. *Compare* Order at 7 (requiring that "'the defendant knew or should have known that the venture had violated Section 1591'" (quoting *Salesforce*, 76 F.4th at 553)) *with A.G.*, 2026 WL 864178, at \*8 ("Section 1595's knowledge element requires constructive or actual knowledge that the undertaking or enterprise violated the TVPRA."). Thus, at best, *A.G.* stands for the unremarkable proposition that when the facts are much, much different than those here, and as applied to hotel owners (not franchisors), a jury may be permitted to weigh the evidence.

### B.    Plaintiff Fails to Plead Choice's "Participation in a Venture."

Though the Court could again dismiss Plaintiff's TVPRA claim on knowledge grounds, additional deficiencies remain in the SAC with respect to the "participation" and "venture" elements. *See* Order at 7 (explaining Plaintiff must plausibly plead "a venture [that] has engaged in an act in violation of Section 1591" and that "the defendant participated in that venture"). The problems that Choice previously identified remain intact and bases for dismissal with prejudice. *See* Choice Br. at 6–18, 21–23.

### i.    Plaintiff Misstates the Legal Standard for Participation in a Venture.

Plaintiff's theory of participation has remained consistent across her pleadings; namely, that Choice "participated directly in aspects of the operation of the [hotel] that influenced whether and to what extent trafficking occurred at the hotel[]." SAC ¶ 80; *compare* FAC ¶ 76.

But the TVPRA does not penalize *influencing* some of the conditions under which sex trafficking is more or less likely to occur. *See A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) ("Under the plain language definition of the term 'participate,' the defendant-hotel must 'take part' in the sex trafficking venture."). That is for good reason: there are endless factors that can impact the likelihood of sex trafficking. Instead, consistent with the actual text of the statute, courts have regularly held that plaintiffs "must plead sufficient facts to plausibly allege that the venture in which the franchisors participated *committed one of these crimes against them*." *Red Roof*, 21 F.4th at 725 (emphasis added).

Plaintiff makes no such allegations. At most, she focuses on Choice's limited involvement in the renting of rooms. *See* SAC ¶ 81. This misses the mark. In its seminal *Red Roof* decision, the Eleventh Circuit found that allegations that "the franchisors managed and 'were inextricably connected to the renting of rooms'" failed to state a TVPRA claim. *K.H. v. Riti, Inc.*, No. 23-11682,

2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (quoting *Red Roof*, 21 F.4th at 726–27). This is because, as both this Circuit and the D.C. Circuit have explained, "something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture." *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024); *Salesforce.com*, 76 F.4th at 562 ("We assume that 'participation' requires more than providing off-the-shelf software (or other common products or services from furniture to telephones or pizza deliveries)."); *see Lydia K.*, 2026 WL 370057, at *3 ("This Court has previously concluded that the alleged beneficiary must 'have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction.'") (quoting *S.M.A. v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2024 WL 1337370, at *13 (N.D. Tex. 2024)).

And that carries particular force here, where Plaintiff does not—and cannot—allege that either she or her traffickers rented the rooms *from Choice*. *See* SAC ¶¶ 67, 81. As a result, Plaintiff is forced to allege something different and still less persuasive: that Choice somehow failed to prevent her trafficking.

ii. **Plaintiff's Allegations Improperly Seek to Hold Choice Liable For a Failure to Detect and Prevent Trafficking.**

Plaintiff admits, as she must, that Choice is a mere franchisor, and thus was "several steps removed from daily hotel operations." *R.C. v. Choice Hotels Int'l, Inc.*, No. 5:23-cv-00872, 2024 WL 1443412, *3 (N.D. Ohio Apr. 2, 2024); *see S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio 2024) ("Although Defendants had general knowledge that sex trafficking afflicts the hotel industry, the Defendants had no contact with [plaintiff's] traffickers and received no specific notice of [plaintiff's] trafficking. Without direct contact, there can be no direct liability."); *S.C. v. Wyndham Hotels and Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL

2186173, *3 (N.D. Ohio May 15, 2024) ("[T]here can be no participation in a venture unless there is some 'interaction with that venture.' [Plaintiff] did not present evidence that Defendants interacted with [her] traffickers. Nor has [plaintiff] explained how Defendants could have been part of a venture with [her] traffickers without interaction with the traffickers."); *see also* SAC ¶¶ 11–12, 15. App Pro, as franchisee, was, thus, a necessary intermediary between the alleged traffickers and Choice itself: "street-level trafficker > hotel > hotel franchisor." *Salesforce*, 76 F.4th at 562.

Plaintiff recognizes that this gap between Choice and the traffickers is perilous to her claims, so she attempts to fill it with long recitations of purely conclusory and incorrect franchise contractual provisions. *See, e.g.*, SAC ¶¶ 80–81, 84. These types of allegations are wholly insufficient. First, as Plaintiff tacitly acknowledges, these are not claims of "participation"—as the statute requires—but of failing to prevent trafficking across the entire industry in general. *See* SAC ¶ 84; *see also id.* ¶ 85 (alleging that Choice "would have prevented . . . trafficking, including the trafficking of [Plaintiff]"). This Court, like many others, has rejected such allegations as at odds with the plain meaning of the TVPRA. *See* Order at 12 ("The TVPRA does not require hotels to monitor or surveil their guests."); *see also, e.g.*, *Lydia K.,* 2026 WL 370057, at *4 (finding insufficient "allegations [that] amount to failures to curtail traffickers rather than participation in any venture"); *P.T.L. v. Choice Hotels Int'l, Inc.*, No. 25-1812, 2025 WL 3280239 (E.D. La. Nov. 25, 2025) (holding "the TVPRA does not impose an affirmative duty to prevent sex trafficking") (citation and internal quotation marks omitted); *A.D. v. Marriott Int'l, Inc.*, No. 22-cv-645, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023) ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture."); *C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022)

(dismissing TVPRA claims and noting that a hotel's failure to identify and prevent trafficking is not tantamount to "participation in a venture" under the TVPRA); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020) ("To be clear, the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking."). And even assuming that somehow as a franchisor Choice had "seen signs of sex trafficking" and "receiv[ed] reviews mentioning sex work occurring at the hotel[]," "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727.

The SAC asserts that Choice's contractual franchise agreements generally failed to prevent and remedy a general social problem (going far beyond the Hotel at issue here) and, *ipso facto*, that necessarily means that Plaintiff can claim liability as a specific victim of that broader problem. But Plaintiff must "connect the dots between *her experience* as a victim of sex trafficking and *a specific defendant*." *Jane Doe (T.R.S.) v. Wyndham Hotels & Resorts,* No. 2:23-cv-01676-DAD-CSK, 2024 WL 3088722, *7 (E.D. Cal. June 20, 2024) (emphasis added); *see also B.J.,* 2023 WL 3569979, *4 (same).

The unpublished decision in *K.H. v. Riti, Inc.* is instructive. There, the Eleventh Circuit considered near identical allegations against an owner/operator (one step closer to the alleged trafficking than a franchisor like Choice): "(1) [the operator] knew or should have known that sex trafficking was occurring at its hotel—based on online reviews, police reports, and visible indicators—yet (2) [the operator] continued to engage in a hotel business relationship with and collect room rental revenue from [the trafficker] for approximately four years." 2024 WL 505063, *2–*3 & nn. 3–4. Such allegations were "inadequate" because "'observing something is not the same as participating in it.'" *Id.* at *3 (quoting *Red Roof*, 21 F.4th at 727); *see also B.M.*, 2020 WL 4368214, at *5. As the Eleventh Circuit observed, "participation" requires *actual participation*.

15

Failure to enforce such participation requirement removes any element of causation from the TVPRA and renders it nothing more than a statute of strict liability, clearly not what was enacted by Congress. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994) ("[T]he text of the statute controls our decision.").

In addition, the Exemplar Franchise Agreement (Doc. No. 30-3) directly contradicts Plaintiff's conclusory claims. Choice has already explained why the Court can consider this document. *See* Choice Br. at 3–5. That document makes clear that Choice *did not* "participat[e] directly in aspects of the operation of the [hotels] that influenced . . . trafficking." SAC ¶ 80. For example, nowhere in the Agreement did Choice "publicly assum[e] responsibility and control over the human trafficking response of all Choice Hotels properties"; "retain[] control over when its branded hotels would share information with law enforcement;" or "expressly retain[] control to terminate hotel staff . . . based on the response to human trafficking." *Id.* ¶ 80(a), (b), (e). Far from it. The Agreement explicitly states that franchisee is "solely responsible for exercising ordinary business control over the Hotel[s], including personnel matters of Hotel employees," Doc. No. 30-3, at 34, and, on the issue of criminal conduct, expressly reserves the prevention of illegal or unethical behaviors to the Franchisee as to their Hotel, *id.* at 21.

Likewise, the Franchise Agreement directly refutes that Choice "directly participated in and retained day-to-day control over renting rooms at the [Hotel]." SAC ¶ 81. Nothing in that contract gives Choice such authority. Rather, the Agreement simply allows the Franchisee to pay to generally utilize the Choice reservation system. Doc. No. 30-3, at 18, 20; *see also id.* at 34 (providing that the franchisee is "solely responsible for . . . [the] pricing of rooms"); *id.* at 22 (indicating that Hotel should communicate its "then-current rates" to Choice). That does not equate to Choice's control of the daily operations of the hotel any more than the use of any software

product grants control over the daily operations of a user company. *See, e.g.*, *Mia v. Kimberly-Clark Corp.*, No. 1:22-cv-02353, 2025 WL 752564, at \*3–\*4 (D.D.C. Mar. 10, 2025) (no TVPRA liability when the defendant "allegedly provided [the labor trafficker] with materials" as that was only "an additional arms-length transaction to ensure that its supplier had the materials needed to produce th[e] goods"); *Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 338–39 (S.D.N.Y. 2025) (holding that "routine financial services" provided to ISIS-connected customers were nothing more than the sort of "ordinary buyer-seller transaction" that does not qualify as TVPRA "participation" because it did not suggest that the bank "provided services or support that was tailored to those customers in any way") (citation and internal quotation marks omitted); *see also Lydia K.*, 2026 WL 370057, at \*3 (explaining that participation in a TVPRA venture requires "an ongoing interest in the success of a specific venture and elect[ing] to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction").

More fundamentally, that Choice played some general role in the renting of rooms at the Hotel does not concomitantly imply that this role was done as knowing participation in a venture to traffic plaintiff.

### C.     Plaintiff Fails to Plead a Cognizable "Venture."

Plaintiff also repeats her failure to plausibly plead a proper TVPRA "venture." *See* Choice Br. at 12–18. As before, Plaintiff proposes two ventures, neither of which meets the requirements of a § 1595 participant claim. First, Plaintiff alleges a trafficking venture among Choice, franchisee App Pro, and her criminal traffickers, though, as explained below, she fails to explain how Choice "participated" in such a venture. SAC ¶ 86. Second, she alleges a "commercial venture" between Choice and App Pro, presumably related to the operation of the relevant Hotel, yet she fails to plead that this presumptively lawful venture somehow engaged in criminal trafficking or violated § 1591 as to Plaintiff. *Id.* ¶ 87.

Moreover, despite characterizing these as two distinct ventures, both collapse into the same set of deficient allegations: that traffickers purportedly rented rooms from the Franchisee, and Choice tangentially benefitted from those rentals by receiving royalties from the Franchisee under the terms of the contractual Franchise Agreement. *Id.* ¶¶ 86–87. As explained above, those allegations do not constitute "participation" and the ventures themselves—even assuming they are differentiated— are insufficient.

### A. Plaintiff's Trafficking Venture Fails for Any Connection Between Choice and Alleged Traffickers.

Plaintiff's "trafficking venture" is easily dispensed with, as she does not plead any contact between Choice and herself or her unidentified traffickers. Plaintiff claims some kind of "continued association" between Choice and her trafficker based on the alleged rentals of a hotel room to that trafficker. *See id.* ¶ 78. Yet Plaintiff does not plead any direct links between Choice and herself or those unidentified alleged criminal traffickers; rather, her and her traffickers' interactions were with the Franchisee's employees alone. *See id.* ¶ 67.

The consequence of failing to link Choice to the traffickers is clear: "Without direct contact, there can be no direct liability." *S.C.,* 728 F. Supp. 3d at 778. Regardless of the definition of "venture" adopted,[4] Choice and the alleged trafficker were never plausibly "associated in fact," 18 U.S.C. § 1591(e)(6), or in a "business enterprise involving some risk in expectation of gain." *Apple*, 96 F.4th at 415–16. Put more plainly, there is nothing "common" among the venture's purported participants, particularly as to allegations of trafficking. *Red Roof*, 21 F.4th at 725; *see*

---

[4] The Seventh Circuit has not adopted a specific definition of the term "venture," though it has rejected the definition from the criminal statute. *See Salesforce.com*, 76 F.4th at 544; *compare Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (adopting definition found in 18 U.S.C. § 1591(e)(6)). Other Courts of Appeals have looked to dictionary definitions and construed "venture" to mean "a common undertaking or enterprise involving risk and potential profit." *Red Roof*, 21 F.4th at 724–26; *see Apple*, 96 F.4th at 415–16 (similar).

*Mueller*, 777 F. Supp. 3d at 338 ("Without having interacted with their allegedly ISIS-connected accountholders any more or differently than they would with their many other customers, the defendants cannot be said to have 'tak[en] part or shar[ed] in an enterprise or undertaking' with them.") (quoting *Apple Inc.*, 96 F.4th at 415).

Even in cases with stronger allegations and as to hotel *operators*, courts demand that there be some kind of commonality among the participants of a venture. For example, just a few months ago, a District Court in Florida considered a similar TVPRA case, but with the added allegation that "'a male front desk employee . . . would come to the room to smoke crack and get a sex act performed on him.'" *N.G. v. G6 Hospitality Prop. LLC*, No. 6:24-cv-2379, 2025 WL 1332210, at *2 (M.D. Fla. May 7, 2025). As the Court noted, this "does not explain how this indicates [the hotel operator]'s participation in a venture with her traffickers." *Id.*

Likewise, in another recent case, a different Florida District Court consider the still stronger allegation that the trafficker "'forced [plaintiff] to have sex with more than one staff member of Defendant'" *A.L. v. G6 Hospitality Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750, at *1 (S.D. Fla. Apr. 18, 2025). The Court observed:

> [W]hile Plaintiff's alleged abuse at the hands of hotel staff may suggest that her trafficker was in cahoots with some unknown staff, it does not suggest a venture existed between Plaintiff's trafficker and the *hotel*—the named party. Plaintiff does not claim Defendant was engaged in a venture with Plaintiff's trafficker through its staff; only that the staff's abuse may be evidence Defendant *knew* about Plaintiff's status as a victim. This does not establish a venture.

*Id.* at *3 (emphasis in original). That reasoning has still more force here, where not only were the hotel staff employed by the Franchisee, not Choice, but Plaintiff has not alleged any interactions at all with anyone associated with Choice. Plaintiff's alleged trafficking venture should be rejected.

## B. Plaintiff's "Commercial Venture" is Inadequately Pled.

Plaintiff's "commercial venture" fares no better. She characterizes it as "a commercial venture with [the] Franchisee [ ] operating the [Hotel]" to "maximize revenue." SAC ¶ 87(b). At core, however, her underlying complaint remains the same—namely, that the venture purportedly "rent[ed] rooms to traffickers"—and insufficient. *Id.* It should be noted, given her vague references to other alleged victims, Plaintiff cannot base her participation claim on allegations of the alleged trafficking of others. *See Red Roof*, 21 F.4th at 725 (explaining that the venture must have "violated the TVPRA as to the plaintiff"). But even as to Plaintiff's own allegations, the "commercial venture" is simply a gloss on her first, deficient venture.

Even taken on its own terms, the commercial venture is still less plausible. For the venture to be legally sufficient, a member of the venture must "ha[ve] engaged in an act [of trafficking]." 18 U.S.C. § 1595(a). Through Count I, Plaintiff alleges that co-Defendant App Pro engaged in such an act, *see* SAC ¶¶ 95–97, either by "harboring" Plaintiff, in violation of 18 U.S.C. § 1591(a)(1), or by engaging in a criminal venture with her trafficker, under § 1591(a)(2).[5] App Pro has already explained why Plaintiff has not properly alleged these acts. *See* Doc. No. 74 at 6–10. In brief, "harboring" is an act that requires some form of concealment beyond the mere rental of rooms[6];

---

[5] A criminal venture under 18 U.S.C. § 1595(a) contains additional knowledge and act requirements different from those found in the TVPRA's civil liability provision of § 1595(a).

[6] This is the case as to the TVPRA. *See, e.g.*, *L.M. v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 WL 4204906, at *5 (E.D.N.C. Sept. 16, 2024) ("[T]he Fourth Circuit has made clear that this verb, in the criminal context, does not mean simply 'to house.'"). And it is true in comparable criminal immigration statutes which use the term "harbor." *See DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 247 (3d Cir. 2012) ("We do not know of any court of appeals that has held that knowingly renting an apartment to an alien lacking lawful immigration status constitutes harboring."); *see also Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024); *United States v. Zheng*, 87 F.4th 336, 343 (6th Cir. 2023); *United States v. McClellan*, 794 F.3d 743, 750-51 (7th Cir. 2015); *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007); *United States v. You*, 382 F.3d 958, 965-66 (9th Cir. 2004).

participation in a criminal venture requires allegations that App Pro "knowingly assist[ed], support[ed], or facilitate[d]" Plaintiff's traffickers' acts[7]; and both require *actual* knowledge of trafficking and the use of force, fraud, or coercion.[8] None of these elements are pleaded here, and their absence is fatal to Plaintiff's claim. *Cf.* Order at 7–8.

Nor can Plaintiff escape the reasoning of cases like *Red Roof*, *Riti*, *N.G.*, and *A.L.* simply by affixing the adjustive "commercial" to the term "venture." The TVPRA uses only the term "venture," without distinguishing among different types of ventures. Rather, the focus should be on the substance of what the SAC alleges. And in terms of substance, the operation of a hotel for a lawful business purpose does not constitute a TVPRA venture because "it is not the franchisee-franchisor relationship which violated the TVPRA." *S.C. v. Sheraton, LLC*, No. 23-CV-00451, 2024 WL 1329422, at *6 (D.N.M. Mar. 28, 2024). There was nothing in the contractual relationship between Choice and App Pro which was unique to Plaintiff or her allegations. *See T.R.S.,* 2024 WL 3088722, at *8 (rejecting commercial venture theory because "plaintiff's allegations describe the business relationships between Franchisor and Franchisee defendants and are not specific to herself at all"). That shows the hollowness of Plaintiff's theory.

As before, Plaintiff likely intends to rest her argument for the "commercial venture" on the Seventh Circuit's decision in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023). As the Court observed, "[t]he facts alleged in *G.G.* . . . are far difference those alleged [here]." Order at 13. In *G.G.*, the Court of Appeals upheld a § 1595(a) participant claim against Salesforce, a software

---

[7] 18 U.S.C. § 1591(e)(4).

[8] *See, e.g.*, *United States v. Todd*, 627 F.3d 329, 333–34 (9th Cir. 2010) ("The knowledge required of the defendant [for § 1591(a)(1)] is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction."); *G.N.C. v. Uniquest Hospitality, LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024) ("[A] claim of 'perpetrator' liability . . . requires actual knowledge of the sex trafficking activity.").

developer. The claim alleged that Salesforce "'participated in commercial ventures' with Backpage"—which, for years, "law enforcement, United States Attorneys General, and every state Governor had publicly identified . . . as the biggest and most notorious sex trafficking and pimping website in the United States"—"to grow [Backpage's] business and that Backpage 'violated the [TVPRA].'" *Id.* at 555, 562 (quoting *Red Roof*, 21 F.4th at 727) (some internal quotation marks omitted). As part of this alleged venture, "'Salesforce sold Backpage targeted solutions addressed to the needs of Backpage's business,' repeatedly assessed Backpage's 'operational needs,' and provided 'active, ongoing support' that was 'tailored' to those needs." *Id.* at 562. *Salesforce* thus stands for the proposition that participation in a "commercial venture" may be sufficient for TVPRA purposes when the non-trafficking party provides "tailored" support to a counter-party whose business "[i]s almost exclusively a sex-trafficking business and that ha[s] engaged in multiple acts in violation of Section 1591, nay, whose business model [i]s built upon systematic and widespread violations of Section 1591." *Id.* at 560–62.

Nothing remotely comparable is present here. Franchisee did not operate "the biggest and most notorious sex trafficking" operation "in the United States." And Choice did not sell "targeted solutions addressed to the needs of [a] business" that was described in the media as "the leading platform for the facilitation of sex trafficking and other forms of human degradation," such that Choice "'knew or should have known' that at least a substantial part of [the franchisee's] business was illegal sex trafficking, including trafficking of children." *Id.* at 555. Indeed, the Seventh Circuit specifically distinguished the situation before it from precisely the one here (citing the Eleventh Circuit's *Red Roof* opinion): "The franchisor defendants in that case were one step removed from the sex traffickers (i.e., street-level trafficker — > hotel — > hotel franchisor). Here Salesforce had a direct and long-term contractual relationship with sex-trafficker Backpage." *Id.* at 562.

More fundamentally, Plaintiff's theory would expand the notion of a "commercial venture" to encompass virtually any business relationship with even a passing connection to trafficking activity. A local business which repairs Franchisee's hotel, an IT support firm that provides internet services, and a contracting firm which supplies housecleaning services are all also in a "commercial venture" by Plaintiff's logic. That contravenes the meaning of the statute, as one District Court ruled: "an individual cannot be found guilty of venture liability . . . where he participates in a legitimate business venture and a partner in that legitimate venture commits a sex trafficking act that incidentally benefits the legitimate business venture." *Powell v. Western Express, Inc.*, 795 F. Supp 3d 1032, 1038 (M.D. Tenn. 2025) (finding no liability because "[n]o one else agreed to engage in sex-trafficking").

This general concept—that a legitimate business's incidental connection to criminal activity does not create liability—has been repeatedly embraced by the Supreme Court in recent years. *See Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292 (2025) ("[R]outine and general activity that happens on occasion to assist in a crime—in essence, 'incidentally'—is unlikely to count as aiding and abetting.") (citation and internal quotation marks omitted). "So, for example, an 'ordinary merchant[ ]' does not 'become liable' for all criminal 'misuse[s] of [his] goods,' even if he knows that in some fraction of cases misuse will occur." *Id.* (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023)).

Ultimately, the SAC's "commercial venture" fails because "it [wa]s not the franchisee-franchisor relationship which violated the TVPRA." *S.C.,* 2024 WL 1329422, at *6; *see T.R.S.,* 2024 WL 3088722, at *8 (rejecting commercial venture theory because "plaintiff's allegations describe the business relationships between Franchisor and Franchisee defendants and are not specific to herself at all"). Rather, the TVPRA contemplates a venture in which, for example, "[a]

motel operator and trafficker . . . work[] together 'to force [a plaintiff] to serve their business objective.'" *Riti,* 2024 WL 505063, \*3 (quoting *Red Roof*, 21 F.4th at 726). A "commercial venture" between a franchisor and franchisee to operate a hotel to "maximize revenue[s]" is plainly different. SAC ¶ 87(b).

## II. Plaintiff's Vicarious Liability Claim Against Choice Should be Dismissed (Count 3).

Plaintiff's second claim is that Choice is vicariously liable for any TVPRA violations carried out by the Franchisee. *See* SAC ¶¶ 102–106. This claim is unchanged from her FAC, *see* Ex. A at 84–85, and retains the same deficiencies that Choice previously identified, *see* Choice Br. at 23–26; Choice Rep. at 10–12. Choice urges those arguments anew.

### A. The FAC Fails to Plausibly Plead that Franchisee is Liable Under the TVPRA.

At the outset, Plaintiff's theory of vicarious liability fails because the SAC does not plausibly plead TVPRA claims against App Pro, whether as a perpetrator or participant, for the reasons given above and previously. *See* Order at 14 ("[H]aving failed to allege a TVPRA claim even against App Pro, it also follows that Plaintiff's vicarious liability claim against Choice Hotels fails, as well."); *see, e.g.*, *E.S.,* 510 F. Supp. 3d at 428; *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1028 (D. Or. 2021); *A.B.*, 484 F. Supp. 3d at 940–41.

### B. The TVPRA Does Not Recognize Vicarious Liability Claims.

Separately, the vicarious liability claim also fails because nothing in the text of the TVPRA explicitly recognizes a vicarious liability claim. *See* 18 U.S.C. § 1595(a). The Supreme Court has cautioned against reading forms of "secondary liability" into federal statutes. *See, e.g.*, *Cent. Bank of Denver,* 511 U.S. at 177, 184. That applies with particular force here, given that Congress could have included vicarious liability when it amended the TVPRA in 2022 (even as it left secondary liability in the form of beneficiary claims). *See* Abolish Trafficking Reauthorization Act of 2022,

P.L. 117-347, § 102, January 5, 2023, 136 Stat 6199, 6200. Congress's decision not to include such liability reinforces that the Court should not do so now.

### C. The SAC Fails to Allege an Agency Relationship.

More fundamentally, the vicarious liability claim fails on its substance. In general, vicarious liability requires plausible allegations of agency and, therefore, "control over the *actual day-to-day work* occurring at that location." *K.O.,* 728 F. Supp. 3d at 650. Conversely, "[t]he right possessed by [a franchisor] to insure compliance with its franchise standards constitutes no more than the right to enforce [ ] a subsidiary duty," and does not imply an agency relationship. *Schear v. Motel Mgmt. Corp. of Am.*, 61 Md. App. 670, 688 (1985); *see DiFederico v. Marriott Int'l, Inc.*, 130 F. Supp. 3d 986, 992 (D. Md. 2015) ("The purpose of Choice's Rules and Regulations was to ensure a similar experience at all Comfort Inn franchise locations and 'maintain[ ] . . . uniform service within, and public goodwill toward, the [Choice] system.'" (citation omitted)); *see also Walker v. Pacific Pride Serv., Inc*., 341 F. App'x 350, 351–52 (9th Cir. 2009).

Here, Plaintiff fails to plausibly allege an agency relationship between Choice and the franchisee. For this purpose, the Court can consider the Exemplar Franchise Agreement included as part of the docket in this matter. *See* Choice Br. at 3–5 (explaining that the Court can considering the Exemplar Franchise Agreement based on Plaintiff's allegations and claims).[9] That Agreement explicitly disclaims an agency relationship: "You are an independent contractor. Nothing in this Agreement makes, or is intended to make, either party an agent, legal representative, subsidiary, joint venturer, partner, employee, independent contractor or servant of the other . . . ." Doc. No.

---

[9] As Choice previously noted, the actual Franchise Agreement contains certain commercial terms that are irrelevant to the instant litigation, but are confidential and business sensitive for Choice. *See* Choice Br. at 4 n.4. Of course, Choice can submit the actual Agreement under seal if the Court desires.

30-3 at 34. Indeed, the Franchisee acknowledges that the "success [of the Hotel] will be largely dependent on [the Franchisee's] ability as an independent business person." *Id.*

Moreover, the Agreement contains a host of provisions that assign the day-to-day management of the Hotel to the Franchisee:

- "'Opening Date' that you begin to rent any portion of the Rentable Rooms under this Agreement." *Id.* at 17.

- "[Franchisee will] [c]onstruct, renovate, operate, furnish, maintain and advertise the Hotel . . . ." *Id.* at 21.

- "[Franchisee will] [e]stablish and maintain a high ethical and moral standard in connection with [its] operation of the Hotel." *Id.*

- " [Franchisee will] [c]omply local, state, and federal laws, rules, regulations and agency orders applicable to you and the construction, renovation, operation, maintenance and promotion of the Hotel . . . ." *Id.*

- "[Y]ou [Franchisee] are solely responsible for exercising ordinary business control over the Hotel, including personnel matters of Hotel employees and pricing of rooms and other services at your Hotel." *Id.* at 34.

Despite multiple opportunities to amend to correct errors in her pleadings, Plaintiff has opted to leave in allegations that are flatly inaccurate given the terms of the actual Agreement. Instead, her allegations regarding control amount are either entirely inaccurate, given the Agreement's terms, or nothing more than irrelevant policies wholly unrelated to trafficking, designed to protect the brand, or any trafficking experienced personally by Plaintiff. *See* SAC ¶¶ 91(b), 91(f), 91(j), 91(m). Other allegations are wholly conclusory and amount to "mere recitations of the requirements for franchisor liability." *Red Roof*, 21 F.4th at 729; *see, e.g.*, SAC ¶¶ 90(d), 91(a), 91(v), 91 (w).

Plaintiff's allegations do not reflect a "right to control the day-to-day operations" of the independently owned and operated Hotel. *Red Roof*, 21 F.4th at 729. Instead, they merely relate to "a franchisor's control over uniformity and standardization across franchises," which are

"insufficient to establish the level of domination that would render a franchisee's independence a fiction." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 155 (E.D.N.Y. 2020) (citation and internal quotation marks omitted); *see Doe K.B. v. G6 Hosp. LLC,* No. 1:23-CV-2597, 2024 WL 4701891, *4 (N.D. Ga. Nov. 5, 2024).[10] Rather, "'[t]he clear trend in the case law in other jurisdictions is that the quality and operational standards and inspection rights contained in a franchise agreement *do not* establish a franchisor's control or right of control over the franchisee sufficient to ground a claim for vicarious liability.'" *Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 343 (4th Cir. 2008) (emphasis added) (quoting *Kerl v. Dennis Rasmussen, Inc.*, 273 Wis.2d 106, 126 (2004)).

### III. Plaintiff's Claims are Sharply Limited by the Statute of Limitations.

Plaintiff filed her original Complaint on Oct. 2, 2024, and alleges that she was trafficked until some unspecified time between January of 2014 through March of 2015, meaning that, at best, only six months fall within the TVPRA's ten-year statute of limitations. In such circumstances, it is entirely appropriate for the Court to curtail the temporal scope of the claims, as numerous other courts have done.[11]

### IV. Dismissal Should Be with Prejudice.

Plaintiff has had multiple opportunities to put forward her best possible case and has failed to do so. Under these circumstances, the Court "ha[s] no reason to believe that [a third] amendment would not be futile in this case." *Arlin–Golf*, 631 F.3d at 823; *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts . . . have broad discretion to deny leave to amend . . .

---

[10] *See also K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190, 2023 WL 5747490, *2 (N.D. Ga. Aug. 30, 2023); *H.G.*, 489 F. Supp. 3d at 708–09.

[11] *See Doe v. G6 Hospitality, LLC*, No. 2:24-cv-01235, 2025 WL 1167550 (W.D. Wash. Apr. 22, 2025); *C.C. v. Rashid*, No. 23-cv-02056, 2024 WL 5200543, at *8 (D. Nev. Dec. 20, 2024); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 710–11 (E.D. Mich. 2020).

where the amendment would be futile.") (citation and internal quotation marks omitted). To allow further motion-to-dismiss litigation would drain both the Court's and Defendants' resources. *See Crestview Vill. Apartments,* 383 F.3d at 558 (holding that "a court may deny leave to amend if the proposed amendment . . . could not survive a second motion to dismiss") (citation and internal quotation marks omitted).

## CONCLUSION

For all the reasons given above, Choice respectfully requests that the Court dismiss Plaintiff's SAC with prejudice.

*/s/ Sara M. Turner*
Sara M. Turner (*pro hac vice* forthcoming)
BAKER, DONELSON, BEARMAN, CALDWELL, & BERKOWITZ PLLC
1901 6th Avenue North
Suite 2600
Birmingham, Alabama 35203
Phone: (205) 328-0480
Fax: (205) 488-3716
smturner@bakerdonelson.com

Julia B. Semenak
State Bar No. 1067234
Frederick J. Strampe
State Bar No. 1029795
BORGELT, POWELL, PETERSON & FRAUEN, S.C.
1243 N. 10th Street, Suite 300
Milwaukee, WI 53205
Phone (414) 276-3600
E-mail: jsemenak@borgelt.com

*Counsel for Choice Hotels International, Inc. and Choice Hotels Services Corp.*

**CERTIFICATE OF SERVICE**

I, Julia Semenak, certify that on April 3, 2026, I caused the foregoing Motion to be filed

with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

*Julia Semenak*
Julia Semenak